UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRANDON CAIN,

          Plaintiff,

v.

UNKNOWN PARTY #1 et al.,

          Defendants.
_____/

Case No. 2:24-cv-177

Honorable Hala Y. Jarbou

**<u>OPINION</u>**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.[1] Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will

---

[1] Plaintiff avers that this action is simply the refiling of a prior action, Case No. 2:22-cv-229, in which claims that survived screening were dismissed without prejudice. (ECF No. 1, PageID.1.) However, rather than simply refiling the claims that were dismissed without prejudice for failure to exhaust administrative remedies, Plaintiff also attempts to reassert the claims that the Court previously dismissed upon preliminary review. *See Cain v. Unknown Parties #1 et al.*, No. 2:22-cv-229 (Jan. 3, 2023). Under these circumstances, Plaintiff is not simply refiling the claims that were previously dismissed without prejudice; he also is refiling claims that were previously dismissed with prejudice for failure to state a claim. Nonetheless, pursuant to *Owens v. Keeling*, 461 F.3d 763 (6th Cir. 2006), the Court will permit Plaintiff to proceed in this action without payment of an additional filing fee in this action.

dismiss, for failure to state a claim, the following claims against Defendants: official capacity claims, Fourteenth Amendment claims, claims related to Plaintiff's grievances, and any challenge to the fact or duration of Plaintiff's confinement. Plaintiff's First Amendment claims against Defendants for retaliation and interference with Plaintiff's access to the Courts with respect to the confiscation of Plaintiff's legal documents remain in the case. The Court will also deny Plaintiff's motion titled "Writ of Habeas Corpus, under All Writs Act." (ECF No. 3.)

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following KCF staff in their individual and official capacities: Inspectors Unknown Parties #1 and #2, Seargeant Unknown Moran, and Correctional Officer Unknown Crane.

Plaintiff alleges that, on September 22, 2022, by orders of Defendants Unknown Parties #1 and #2 and Moran, Plaintiff's property was taken from his cell. (ECF No. 1, PageID.4.) Plaintiff immediately filed a grievance related to his property. (*Id.*)

The following day, Plaintiff was called to the office where Plaintiff saw his property, including his legal documents. (*Id.*) Defendants Unknown Parties #1 and #2 and Moran asked Plaintiff to assist them in providing information about an officer suspected of introducing contraband into the facility. (*Id.*) Plaintiff told Defendants Unknown Parties #1 and #2 and Moran that he did not have any such information. (*Id.*) Defendants Unknown Parties #1 and #2 then told Plaintiff that if Plaintiff could not help them, they would not help Plaintiff or would otherwise interfere with Plaintiff's court dates for his pending litigation and ensure that Plaintiff never saw

2

his legal documents again. (*Id.*) When Plaintiff told Defendants Unknown Parties #1 and #2 and Moran that he had no information and would not lie, Defendant Moran told Plaintiff, "Well, that's too bad, I'll have to write you this misconduct." (*Id.*, PageID.5.) Plaintiff stated that he would file a grievance. (*Id.*) Plaintiff was then informed that he was going to be transferred to a new facility. (*Id.*) One of the Defendant Unknown Parties added that, because Plaintiff would not help them and threatened to file a grievance, he would ensure that Plaintiff's grievance "goes nowhere." (*Id.*) Plaintiff was placed in administrative segregation for a Class I misconduct for smuggling, which was based on Plaintiff's possession of a toothbrush and dental floss. (*Id.*)

While in administrative segregation, Plaintiff saw Defendant Crane retrieving Plaintiff's property with large portions of Plaintiff's property missing. (*Id.*) Defendant Crane stated to Plaintiff, "Hey, you're a smuggler, and you have the nerve to threaten us with a grievance, you'll regret that, and be happy if we give you anything." (*Id.*) When Plaintiff told Defendant Crane that he could not retaliate against Plaintiff, Defendant Crane told Plaintiff that they could "do what we want." (*Id.*)

Plaintiff was subsequently transferred to the Chippewa Correctional Facility, where he was placed in administrative segregation and received a Class I misconduct report previously written by Defendant Crane for possession of dangerous contraband. (*Id.*, PageID.6.) During the September 28, 2022, hearing on Plaintiff's two misconduct charges, Plaintiff informed non-party Hearing Officer O'Brien that the charges were retaliatory. (*Id.*) Hearing Officer O'Brien became agitated and sentenced Plaintiff to serve ten days in detention in addition to the five already served. (*Id.*) Plaintiff then pleaded guilty to the second charge to avoid harsher sanctions, receiving less than half of the time in detention that he received for the contested charge. (*Id.*) Following the

3

hearing, a non-party corrections officer told Plaintiff that he would "have a lot of trouble" if he kept "tossing about the retaliation word." (*Id.*)

Plaintiff received his property on September 28, 2022, with many items, including Plaintiff's legal property, missing. (*Id.*, PageID.7.) Plaintiff also never received a response regarding his September 23, 2022, grievance. (*Id.*) Plaintiff filed additional grievances against Defendants but did not receive a response and received the form to complete the Step II grievance in an untimely manner. (*Id.*, PageID.13–14, 16.)

Plaintiff alleges that Defendants violated MDOC policy and deprived Plaintiff of due process in the confiscation of his property. (*Id.*, PageID.7.)

Plaintiff also alleges that the confiscated documents are necessary to support Plaintiff's efforts to challenge his criminal convictions. (*Id.*, PageID.10.) Plaintiff alleges that he had previously been unable to receive documents from the trial court related to Plaintiff's criminal convictions. (*Id.*) His family eventually hired a private investigator who was able to obtain information and files in the form of "new evidence" to support Plaintiff's claims of actual innocence and ineffective assistance of counsel. (*Id.*, PageID.8–10.) In addition to the files and documents obtained by the private investigator, Plaintiff's confiscated documents included transcripts necessary to prepare Plaintiff's pleadings and affidavits from key witnesses. (*Id.*, PageID.11.) Plaintiff attempted to receive new copies of the documents but was unable to do so. (*Id.*, PageID.15.) Plaintiff claims that, because of the confiscation of these documents, Plaintiff's motion for relief from judgment was denied on January 17, 2023 (*id.*, PageID.12), and Plaintiff has been impacted in his ability to pursue his petitions for writ of habeas corpus (*id.*, PageID.17–18).

Additionally, Plaintiff's legal documents contained a draft civil rights complaint concerning the spread of COVID-19, which Plaintiff is unable to replicate and file. (*Id.*)

Plaintiff seeks injunctive, declaratory, and monetary relief. (*Id.*, PageID.19.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

5

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Based upon the foregoing allegations, the Court construes Plaintiff's complaint to raise four claims against Defendants in their individual and official capacities: First Amendment retaliation, First Amendment interference with access to the courts, Fourteenth Amendment denial of due process related to the confiscation of Plaintiff's property, misconduct charges, and violation of MDOC policy, and claims related to the handling of Plaintiff's grievances. The Court will address Plaintiff's claims in turn.

A.    **Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S.

95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at KCF, which is where he avers that Defendants are employed. Plaintiff's requests for injunctive and declaratory relief do not relate to an ongoing violation and are not prospective. Thus, he cannot maintain his claims for injunctive and declaratory relief against Defendants in their official capacities.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim

### B.   First Amendment

#### 1.   Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Here, Plaintiff claims that he verbally complained about the behavior of Defendants Unknown Parties #1 and #2 and Moran and filed a grievance regarding Defendants' conduct. Accordingly, Plaintiff has alleged sufficient facts to support a claim of protected activity.

Moreover, Plaintiff alleges that he refused to provide Defendants Unknown Parties #1 and #2 and Moran with false information about an unidentified officer. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

In *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), the United States Court of Appeals for the Second Circuit considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88–93. *But see Dixon v. Gonzales*,

9

No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). At this stage of the proceedings, the Court will assume without deciding that Plaintiff's refusal to provide what he alleges was false information was protected conduct as well.

Given the statements that Plaintiff's attributes to Defendants and their subsequent conduct, at this stage of the proceedings, the Court will not dismiss Plaintiff's First Amendment retaliation against Defendants.

### 2.     Interference with Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

10

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Taking Plaintiff's allegations as true as required at this stage, Plaintiff's First Amendment claim for interference with Plaintiff's access to the Courts cannot be dismissed on screening.

    **C.**    **Fourteenth Amendment Due Process**

        **1.**    **Violation of MDOC Policy**

Plaintiff indicates that Defendants' conduct violated prison policy. To the extent Plaintiff intends to bring a due process claim based upon said violations, Plaintiff fails to allege a constitutional claim.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

### 2.     Confiscation of Plaintiff's Property

Plaintiff alleges that Defendants confiscated Plaintiff's property without due process of law. However, Plaintiff's Fourteenth Amendment claims regarding the deprivation of property are barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its

12

departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of any personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### 3. Misconduct Reports

Plaintiff alleges that he was denied due process in the issuance and handling of two misconduct reports. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23,

2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff does not allege that his misconduct convictions had any effect on the duration of his sentence.

Plaintiff is serving sentences imposed in 2009 and 2012 for crimes committed in 2007 and 2012. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=490544 (last visited Feb. 6, 2025). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, no misconduct conviction could have impacted the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that any misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff alleges that he received, at most, twenty-two days in administrative segregation because of the two misconduct convictions.[2] (ECF No. 1, PageID.6.) The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to

---

[2] Plaintiff alleges that he received fifteen days in administrative segregation for the charge that "he chose to contest" and "less than half" that time for the charge for which he pled guilty. (ECF No. 1, PageID.6.)

determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Therefore, the segregation imposed as a result of Plaintiff's misconduct convictions would not rise to the level of an atypical and significant hardship. Accordingly, the Court finds that Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim regarding the misconduct proceedings.

**D.     Claims Related to Plaintiff's Grievances**

Plaintiff's complaint indicates that Plaintiff filed grievances against Defendants but did not receive responses and received the form to complete the Step II grievance in an untimely manner. (ECF No. 1, PageID.7, 13–14, 16.) To the extent that Plaintiff seeks to raise a claim related to Plaintiff's access to or use of the administrative grievance process, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in

15

the grievance process, Defendants' conduct could not have deprived Plaintiff of a Fourteenth Amendment right to due process.

Moreover, Plaintiff cannot state a claim for violation of his First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendant Hayrman's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process

16

is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim related to Plaintiff's access to or use of the administrative grievance process.

### III.    Pending Motion

On January 28, 2025, Plaintiff filed a motion titled "Writ of Habeas Corpus, under All Writs Act." (ECF No. 3.) In his motion, Plaintiff seeks to have the Court expedite the screening of Plaintiff's complaint. (*Id.*, PageID.24.) As the Court has completed its screening of Plaintiff's complaint, the Court will deny Plaintiff's request for relief as moot.

Despite its title, Plaintiff's motion does not appear to request habeas relief. Nonetheless, to the extent that Plaintiff's motion or any portion of Plaintiff's complaint seeks Plaintiff's release from prison, Plaintiff's challenge to the fact or duration of confinement should be brought as a petition for habeas corpus. A request for habeas relief is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (holding that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, such claims will be dismissed and any request for such relief in his motion will be denied. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (concluding that dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (discussing that the reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3)

and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

## **Conclusion**

Having conducted the review required by the PLRA, the Court will dismiss, for failure to state a claim, the following claims against Defendants: claims against Defendants in their official capacities, Fourteenth Amendment claims, claims related to Plaintiff's grievances, and any challenge to the fact or duration of Plaintiff's confinement. Plaintiff's First Amendment claims against Defendants for retaliation and interference with Plaintiff's access to the Courts with respect to the confiscation of Plaintiff's legal documents remain in the case. Plaintiff's motion (ECF No. 3) will be denied as moot to the extent that it requests that the Court expedite its screening of Plaintiff's complaint and denied with prejudice to the extent that it seeks habeas relief.

An order consistent with this opinion will be entered.


Dated: February 19, 2025                           /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE